**The Rev. O. Lloyd HUTCHISON, Plaintiff-Appellant,**

v.

**The Rev. James S. THOMAS; The Rev. Merlin D. Vining; The Rev. Thomas L. Cromwell; The Rev. Richard L. Burns and the East Ohio Conference of the United Methodist Church; The Board of Ordained Ministry of the East Ohio Conference of the United Methodist Church, and The Judicial Council of the United Methodist Church, Defendants-Appellees.**

No. 85–3051.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 24, 1986.

Decided April 28, 1986.

Gerald P. Leb (argued), Arthur S. Leb, Amerman, Burt, & Jones Co., Canton, Ohio, for plaintiff-appellant.

Rex W. Miller, Douglas N. Godshall, Ellen Loth, Canton, Ohio, Samuel W. Witwer (argued), Witwer, Moran, Burlage, & Witwer, Chicago, Ill., for defendants-appellees.

Before JONES and WELLFORD, Circuit Judges and GILMORE, District Judge *.

GILMORE, District Judge.

This is an action brought by appellant, an ordained Methodist minister, challenging his enforced retirement under Church disciplinary rules. The defendants are a Bishop of the Methodist Church and three of his subordinates, the Judicial Council of the Church, as well as the East Ohio Conference of the Church and the Board of Ordained Ministry of the Conference. The district court dismissed the complaint for lack of subject matter jurisdiction. We affirm.

In his original complaint, appellant raised a number of grievances against defend-

---

* The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

ants, including contentions that defendants had improperly applied provisions of *The Discipline of the United Methodist Church* (hereinafter *"The Discipline"*), governing the appointment and placement of ministers, and that defendants had misled and misguided various units of the denomination in bringing about his early retirement. He further alleged that defendants were guilty of "fraudulent or collusive or arbitrary" action, as well as defamation, intentional infliction of emotional distress, and breach of contract.

On December 5, 1984, appellant filed a proposed amended complaint that added his wife, claimed loss of consortium on her part, and expanded considerably on his earlier claims.

Prior to the filing of this amended complaint, extensive argument on a motion to dismiss had been heard. On December 11, 1984 the district court filed its opinion granting the motion to dismiss for lack of subject matter jurisdiction. The Court additionally dismissed the complaint for noncompliance with the mandatory requirements of Rules 8(a), 9(b) and 10(b) of the Federal Rules of Civil Procedure.

Appellant's basic claim is that the United Methodist Church wrongfully expelled him from his ministry in the defendant East Ohio Conference by fraudulent or collusive or arbitrary application of the rules, laws and doctrinal statements known as *The Discipline.* Appellant was forced to retire due to his alleged inability to work with congregations and get along with members. He had been transferred several times. Several hearings were conducted concerning his ability to relate properly to his congregations. After a final determination by the Church's highest tribunal, the Judicial Council, he was placed on involuntary retirement. He alleges that throughout these proceedings the Bishop and other parties misrepresented his relationships at various churches, and through this misrepresentation brought about his enforced retirement.

The crux of appellant's fraud claim is as follows:

The individual Defendants acted to have Plaintiff declared "unappointable." ... The essence of Plaintiff's claim is that this false characterization of his ministry was carried out through fraud and misrepresentation, and by withholding from the general bodies concerned (the Board of Ordained Ministry, the Annual Conference of the East Ohio Conference of the United Methodist Church, and the Judicial Conference of the United Methodist Church) the true facts surrounding the events of the Plaintiff's ministry.

Appellant's brief p. 7.

Appellant is really seeking civil court review of subjective judgments made by religious officials and bodies that he had become "unappointable" due to recurring problems in his relationships with local congregations. This Court cannot constitutionally intervene in such a dispute.

The Supreme Court of the United States has steadfastly upheld the First Amendment's command that secular authorities may not interfere with the internal ecclesiastical workings and disciplines of religious bodies, although there may be occasions when civil courts can resolve disputes over the disposition and use of church property.

As the Supreme Court of the United States pointed out as early as 1871 in *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 20 L.Ed. 666:

... [W]e think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.

*Id.* at 727.

Further, the Court said:

In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if anyone aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

Nor do we see that justice would be likely to be promoted by submitting those decisions to review in the ordinary judicial tribunals ...

*Id.* 728–29.

This doctrine was recently reaffirmed by the Supreme Court in *Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976):

In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Id.* at 724–25, 96 S.Ct. at 2387–88.

*Simpson v. Wells Lamont Corporation,* 494 F.2d 490 (5th Cir.1974) is similar to the instant case. There an expelled United Methodist minister sought damages and other relief against his bishop and denominational officials. The Fifth Circuit dismissed the action in a strongly worded opinion:

This case involves the fundamental question of who will preach from the pulpit of a church, and who will occupy the church parsonage. The bare statement of the question should make obvious the lack of jurisdiction of a civil court. The answer to that question must come from the church.

*Id.* at 492.

Quoting, with approval, from the district court opinion, the court said:

"[N]o matter how one may look at this dispute, it had to do with the substance and content of the very words uttered within the church itself, going right to the heart of the doctrine and beliefs and types of sermons that are delivered in churches. Now, the church is a sanctuary, if one exists anywhere, immune from the rule or subjection to the authority of the civil courts, either state or federal, by virtue of the First Amendment."

*Id.* 492–93.

Appellant, however, relies on dictum in *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929), to support his argument that there exists an exception to this general rule of deference where cases involve "fraud, collusion, or arbitrariness," and that this case falls within that exception. There, the Court said:

In the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights,

are accepted in litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise.

*Id.* at 16, 50 S.Ct. at 7.

The Court dealt with this language in *Milivojevich, supra,* saying:

> *Gonzalez* first adverted to the possibility of "marginal civil court review," ... in cases challenging decisions of ecclesiastical tribunals as products of "fraud, collusion, or arbitrariness." However, since there was "not even a suggestion that [the Archbishop] exercised his authority [in making the chaplaincy decision] arbitrarily," 280 U.S., at 18, 50 S.Ct., at 8, the suggested "fraud, collusion, or arbitrariness" exception to the *Watson* rule was dictum only. And although references to the suggested exception appear in opinions in cases decided since the *Watson* rule has been held to be mandated by the First Amendment, no decision of this Court has given concrete content to or applied the "exception." ...
>
> ... We have concluded that whether or not there is room for "marginal civil court review" under the narrow rubrics of "fraud" or "collusion" when church tribunals act in bad faith for secular purposes, no "arbitrariness" exception—in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laws and regulations—is consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.

*Id.,* 426 U.S. at 712–13, 96 S.Ct. at 2381–82.

It is true that no issue of fraud or collusion was involved in *Milivojevich* since the only claim was of arbitrariness. *Id.* at 713 n. 7, 96 S.Ct. at 2832. Nevertheless, the fact remains that the Court has established a firm policy protecting First Amendment rights that prohibits inquiry into ecclesiastical decisions in a hierarchical church, absent the most unusual circumstances. As pointed out in Ellman, *Driven From The Tribunal; Judicial Resolution of Internal Church Disputes,* 69 Cal.L.R. 1378, 1987 (1981):

> [T]he only exception to strict deference apparently left open by [*Milivojevich*] was "marginal review" for fraud or collusion and the possibility of such review was not endorsed, but merely left for later consideration.

This Court finds no basis for intervention in in the instant case. There is no showing of such egregious action by the hierarchical authorities of the United Methodist Church to justify court interference, if such interference is even permitted under *Milivojevich.* Assuming, without deciding, that review is allowed for fraud or collusion, it is still only allowed for fraud or collusion of the most serious nature undermining the very authority of the decision-making body. Certainly there is no claim or showing of such fraud or collusion here. And we emphasize that we do not hold that such great fraud would be a basis for court interference. We merely state that possibility has been left open by the Supreme Court, but further state there is no showing whatever in this case that such egregious conduct occurred.

Appellant cites as authority for his position *Alberts v. Devine,* 395 Mass. 59, 479 N.E.2d 113 (1985), *cert. denied,* —— U.S.

——, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). There a Methodist minister brought an action against his psychiatrist and two of his clerical superiors. The minister alleged that his superiors had induced the psychiatrist to disclose confidential information about the minister, and had then used that information to block his reappointment as minister. The court held, among other things, that even if *The Discipline* or other rule of the Church gave the minister's clerical superiors the right or duty to seek medical information from his psychiatrist, the First Amendment did not preclude imposition of liability on the superiors, nor did it bar judical inquiry into the church's proceedings culminating in the minister's failure to gain reappointment.

The facts in *Alberts* are significantly different from the facts in this case, and the case can therefore be distinguished. We do not find the case to be a suitable precedent for the relief sought by appellant here. It involves an entirely different issue with respect to confidentiality between a patient and a psychiatrist. It is possible, in a fact situation such as *Alberts,* this Court could find jurisdiction, but clearly the case does not provide a basis for jurisdiction here because of the very different factual situation.

Appellant also argues that this case can be decided by application of the "neutral principles" doctrine most recently discussed in *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). That Court expressly noted, however, that the "neutral principles" exception to the usual rule of deference applies only to cases involving disputes over church property. Quoting *Presbyterian Church v. Hull Church,* 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969), the Court said:

[T]here are neutral principles of law, *developed for use in all property disputes,* which can be applied without "establishing" churches to which property is awarded.

*Id.,* 443 U.S. at 599, 99 S.Ct. at 3023 (emphasis added).

But this case does not involve a dispute over church property. The "neutral principles" doctrine has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be. The claim here relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law. *See Kaufmann v. Sheehan,* 707 F.2d 355, 358 (8th Cir.1983). The neutral principles doctrine relating to church property is simply not applicable in the instant case.

Numerous other federal courts have found federal subject matter jurisdiction lacking in cases such as this.[1] The Fourth Circuit in *Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164 (4th Cir.1985) recently held that the First Amendment prevented application of Title VII protection to an Associate in Pastoral Care in the Seventh-day Adventist Church:

The role of an associate in pastoral care is so significant in the expression and realization of Seventh-day Adventist beliefs that state intervention in the appointment process would excessively inhibit religious liberty.

*Id.* at 1168.

The same reasoning is applicable in the instant case, which involves a church decision on the status of one of its ministers. It is therefore clear that the action of the district court in dismissing the case was proper, and the judgment of the district court is affirmed.[2]

---

1. *See, e.g., Simpson v. Wells Lamont Corp.,* 494 F.2d 490 (5th Cir.1974); *First Baptist Church of Glen Este v. Ohio,* 591 F.Supp. 676 (S.D.Ohio 1983); *Nunn v. Black,* 506 F.Supp. 444 (W.D. Va.), *aff'd,* 661 F.2d 925 (4th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 299 (1982).

2. Appellant's other argument, that the district court erred in relying upon FRCP 8(a), 9(b) and 10(b) without expressly ruling upon appellant's motion to amend his complaint, is moot in light of the affirmance on the constitutional issue, as is the issue of whether there is a cause of action for loss of consortium for appellant's wife.