**Joseph P. LEWIS and Julia A. Lewis, Plaintiffs,**

v.

**LAKE REGION CONFERENCE OF SEVENTH DAY ADVENTISTS, Defendant.**

**No. 90–CV–73064–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 11, 1991.

---

3. *See* deposition of Danny Gaydou at pp. 118–122.

Melissa Z. El, Detroit, Mich., for plaintiffs.

Randolph D. Phifer, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

HACKETT, District Judge.

But if it be a question of words and names, and of your law, look ye to it; for I will be no judge of such matters. Acts 18:15.

The issue presented is whether the free exercise clause of the First Amendment to the United States Constitution prohibits the court's exercise of jurisdiction in this case. Plaintiff Joseph P. Lewis is a Seventh Day Adventist minister. His complaint arises out of his termination from employment as a minister by defendant and alleges breach of employment contract (Count 1); promissory estoppel (Count 2); intentional infliction of emotional distress (Count 3); and a derivative spousal claim (Count 4). Defendant moves for dismissal pursuant to Fed. R.Civ.P. 12(b)(1) and (6) and summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTUAL BACKGROUND

The Seventh Day Adventist Church is a world-wide Ecclesiastical Corporation which is organized on a hierarchical basis. At the highest level in the hierarchy is the General Conference. Within the General Conference are divisions which generally encompass continents or oceanic regions. The North American Division includes all of the United States. Each division contains "Union" conferences which have authority over several states. The Union conferences have organized under them local conferences called "Regions," which cover specified geographical areas within the Union conferences. Michigan is part of the Lake Union Conference and certain churches in Michigan are part of the defendant Lake Region Conference.

Plaintiffs were members of the Lake Region Conference. Plaintiff Joseph Lewis (hereinafter plaintiff) had been employed as a minister by the Lake Region Conference. The last churches to which he was assigned were the Wood Street Seventh Day Adventists Church in Muskegon, Michigan, and the Idlewild Church in Idlewild, Michigan, which he served simultaneously.

In September, 1986, plaintiff was terminated from his employment by the Executive Committee of the Lake Region Conference. Plaintiff requested an appeal of this termination to the Lake Union Conference and a hearing was held. The Lake Union Conference recommendation provides:

After due deliberation on the information presented to the conciliation panel IT IS RECOMMENDED:

That Elder Joseph P. Lewis be retained as an employee by the Lake Region Conference until a call can be arranged for him from another denominational organization, and

That the Lake Region Conference request assistance from Lake Union Conference in arranging a call for Elder Lewis, and that if necessary, the Lake

Region Conference give financial assistance for a period not to exceed six (6) months to the denominational organization extending a call to Elder Lewis.

The Lake Region Conference reinstated plaintiff but was unsuccessful in arranging a call for him to another organization. On April 18, 1988, the defendant's Executive Committee again voted to terminate plaintiff's employment based upon a disagreement with him over the handling of an estate of which the Lake Region Conference was a devisee and for which plaintiff was the personal representative and a devisee. On April 24, 1988, plaintiff requested an appeal of his termination. A hearing was held on August 1, 1988, which plaintiff did not attend due to some disagreements over procedural issues. The defendant referred the matter for further proceedings to the Lake Union Conference and directed plaintiff to pursue his appeal with the Union Conference. In September, 1988, the membership, commonly known as the Constituency of the Lake Region Conference voted to reinstate plaintiff to the payroll pending the outcome of his appeal. Plaintiff did not take part in the Lake Union Conference proceeding and on December 18, 1988, the Lake Region Conference Executive Committee voted to terminate plaintiff's salary effective December 31, 1988.

Following the salary termination plaintiff instituted an action for injunctive relief in the Wayne County Circuit Court, which did not issue an injunction. Thereafter, plaintiff requested non-binding arbitration before the Lake Union Conference Arbitration/Conciliation Committee which conducted a hearing on June 9, 1989. At the close of the hearing the panel issued the following recommendation:

RECOMMENDED, That the Lake Region Conference give careful consideration to the reinstatement of Elder J.P. Lewis to ministry to an area in the conference not previously served by J.P. Lewis.

Defendant appointed a subcommittee to review the matter and the subcommittee issued a recommendation to reinstate plaintiff with full retroactive back pay. The defendant's Executive Committee did consider reinstating plaintiff, but ultimately did not reinstate him.

The policies and guidelines for the North American Division of the Seventh Day Adventist Church are set forth in *Working Policy of the North American Division of the General Conference.* It is intended to be "the authoritative voice of the Church in all matters" and is to be "adhered to by all denominations in North America." (Introduction to Policy). Section B 05 10 of the policy states:

*B 05 10 Churches and Local Conference Sessions* Churches are united in the local conference organization and appoint to the local conference session delegates who are duly authorized to represent the churches in the councils of the conference. The Conference session elects officers, grants credentials and licenses, adopts or changes the constitution, and transacts other business. One of its most important acts is the election of the executive committee, whose duty is to function for the constituency during the interim between sessions. The executive committee is thus vested with the delegated authority of all the churches within the conference.

The Constitution of the Lake Region Conference authorizes the promulgation of By–Laws (Article IV). The By–Laws of the Lake Region Conference specifically empower the Executive Committee to appoint and remove ministers (Article VI, Subsection I(B)).

## DISCUSSION

Defendant argues that the First Amendment to the United States Constitution prohibits civil courts from interfering with plaintiff's dismissal as a minister of the Seventh Day Adventist Church. Defendant points out that there was a history of disagreement between the parties which ultimately resulted in plaintiff's dismissal. Defendant further asserts that the recommendation of the arbitration panel was not binding on either party and that the Regional Conference was free to decide not to reinstate plaintiff. Defendant notes that

there is no question that the Executive Committee had authority to hire and fire ministers. Defendant contends that plaintiff's position is that the Executive Committee failed to follow its own procedures in processing his termination and urges this court to interpret those procedures and determine whether or not the Executive Committee in fact followed them. Defendant argues that the First Amendment bars this type of inquiry by the court. Defendant further argues that plaintiffs' additional claims of loss of consortium and intentional infliction of emotional distress are derivative of the principal claim of wrongful discharge and must be dismissed.

The First Amendment provides in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;...." Based on the second provision, known as the free exercise clause, the United States Supreme Court has held that courts may not question a church's rulings on matters of religious doctrine or authority. *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952); *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871).

> Whenever the questions of discipline, or of faith or ecclesiastic rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.

*Watson*, 80 U.S. (13 Wall.) at 727.

The rulings of the highest ecclesiastical authority which has heard the matter must be enforced by the civil courts. It is only possible in cases of fraud by these authorities for the court to question these ecclesiastical judgments. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).[1] In that case, the Supreme Court held that a review of either the jurisdiction of church authority or whether the authorities acted in conformity with church law would result in undue interference with freedom of religion. Courts are to refrain from ruling contrary to church authority unless the court's decision is based upon principles which have no reference to religious doctrines or rulings.[2] *Id.* at 721–24, 96 S.Ct. at 2386–87.

In *Hutchison v. Thomas*, 789 F.2d 392 (6th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), a Methodist minister challenged his forced retirement. The minister claimed that the United Methodist Church had expelled him from his ministry by fraudulent, collusive, or arbitrary application of the church's rules, laws, and doctrinal statements. The minister also alleged defamation, intentional infliction of emotional distress, breach of contract, and a derivative spousal claim for loss of consortium. *Id.* at 393. The district court dismissed the claims. The Court of Appeals affirmed the dismissal, holding that the district court lacked subject matter jurisdiction over the action.

The court found that inquiring into the employment relationship between a minister and church involves a review of a religious organization's rules and regulations of internal discipline and government.

This case involves the fundamental question of who will preach from the pulpit of a church, and who will occupy the church

---

1. The only exception to strict deference left open by *Milivojevich*, "was 'marginal review' for fraud or collusion and the possibility of such review was not endorsed, but merely left open for later consideration." *Hutchison v. Thomas*, 789 F.2d 392, 395 (6th Cir.), *cert denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986) (quoting Ellman, *Driven From The Tribunal; Judicial Resolution of Internal Church Disputes*, 69 Cal. L.R. 1378, 1987 (1981)).

"Assuming, without deciding, that review is allowed for fraud or collusion, it is still only allowed for fraud or collusion of the most serious nature undermining the very authority of the decision-making body." *Hutchison*, 789 F.2d at 395.

2. This neutral principles exception to the rule of deference "applies only to cases involving disputes over church property." *Hutchison*, 789 F.2d at 396.

parsonage. The bare statement of the question should make obvious the lack of jurisdiction of a civil court. The answer to that question must come from the church.

*Id.* at 394 (quoting *Simpson v. Wells Lamont Corp.*, 494 F.2d 490, 492 (5th Cir. 1974)).[3]

The court further found that the neutral principles doctrine relating to church property was inapplicable. "The claim here relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law." *Hutchison*, 789 F.2d at 396.

The court cited with approval the reasoning in *Rayburn v. General Conference of Seventh–Day Adventists*, 772 F.2d 1164 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). In that case, the issue was whether a woman denied a pastoral position in the Seventh Day Adventist Church could charge the church with sexual and racial discrimination in violation of Title VII of the Civil Rights Act of 1964. The court found the suit barred by the free exercise clause of the First Amendment. The court held:

> The right to choose ministers without government restriction underlies the well-being of religious community, ... for perpetuation of a church's existence may depend upon whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and the world at large.
>
> \* \* \* \* \* \*
>
> Here the balance weighs in favor of free exercise of religion. The role of an associate in pastoral care is so significant in the expression and realization of Seventh-day Adventist beliefs that state in-

tervention in the appointment process would excessively inhibit religious liberty.

*Id.* at 1167–68 (citations and footnotes omitted).[4]

■ Plaintiffs respond that the court is only required to find that plaintiff was terminated for reasons contrary to the Seventh Day Adventist's Working Policy. Plaintiffs contend that this policy provides that ministers can only be discharged for moral failure or dissidence regarding the fundamental beliefs of the church. Plaintiffs argue that because this finding does not require the court to excessively entangle itself in the analysis of church doctrine and practices that this court's exercise of jurisdiction does not violate the free exercise clause. Plaintiffs rely upon *EEOC v. Pacific Press Pub. Ass'n.*, 676 F.2d 1272 (9th Cir.1982).

Plaintiffs' reliance on that case is misplaced. In that case defendant, a nonprofit religious publishing house, was charged with violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Plaintiff, a secretary at defendant publisher, contested the monetary allowance scheme which paid male employees a higher allowance. She was subsequently terminated and alleged that the termination was in retaliation for her filing charges with the Equal Opportunity Employment Commission (EEOC). Defendant publisher was affiliated with the Seventh Day Adventist Church.

In deciding that requiring defendant to refrain from violating Title VII did not infringe on defendant's free exercise of religious beliefs, the court specifically noted that plaintiff was not a minister in the church, and that the decision may have been different if she had been a minister. 676 F.2d at 1278. The court found that

---

**3.** *See also, McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.), *cert denied*, 409 U.S. 1050, 93 S.Ct. 513, 34 L.Ed.2d 504 (1972). "The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." *Id.* at 558–59.

**4.** *See also, Natal v. Christian and Missionary Alliance*, 878 F.2d 1575 (1st Cir.1989) (inquiry into allegation that church failed to follow its own rules and federal labor law in discharging minister barred by free exercise clause).

 

plaintiff's duties "did not go to the heart of the church's function in the manner of a minister or a seminary teacher." *Id.* The case is inapplicable to the instant case in which plaintiff is a minister.

Plaintiffs further argue that an employment contract is a contract recognized at civil law and that the court may take jurisdiction of this civil law question. That argument is unpersuasive in light of the Sixth Circuit's holding in *Hutchison,* that status and employment as a minister of a church does not fall within the neutral principles exception, but concerns internal church discipline and organization. 789 F.2d at 396.

Citing *Watson,* plaintiffs also argue that the law requires courts to defer to the decisions of the highest ecclesiastic body with authority over the controversy. Plaintiffs contend that the Executive Committee is not the highest body and that its decisions do not require deference by the court. Plaintiffs misread *Watson.* In that case, the Supreme Court stated: "Whenever the questions ... have been decided by the highest of these church judicatories *to which the matter has been carried,* the legal tribunals must accept such decisions as final...." 80 U.S. (13 Wall.) at 727. The law requires that courts give deference to the decisions of the highest tribunal that actually decided the issue, not the highest tribunal that could decide the issue.

It is without question that the Executive Committee had the authority to terminate plaintiff's employment as a minister. In order to determine whether or not the Committee followed its own rules and procedures in discharging plaintiff, the court would be involved in an inquiry into questions of ecclesiastic rule, custom, and law. Plaintiffs do not allege fraud or collusion. Consequently, the free exercise clause of the First Amendment bars this court's further inquiry in this case. The case law from the Supreme Court, the Sixth Circuit, and other circuits supports this court's finding that it lacks subject matter jurisdiction over this case. Accordingly,

IT IS ORDERED that defendant's motion to dismiss hereby is GRANTED.