RALPH B. GUY, JR., Circuit Judge.
 

 A minister brought this diversity action against the defendant religious organization that terminated his employment. The district court dismissed the action, holding that the First Amendment bars a civil court from intervening in an employment dispute between a church and its clergy. We affirm.
 

 
 *941
 
 I.
 

 The Seventh Day Adventist Church, a worldwide ecclesiastical corporation, is organized into a hierarchical structure. At the highest level of the hierarchy is the General Conference. The General Conference is divided into geographic “divisions,” which in turn are divided into “unions,” which are further divided into “regions.” The defendant, the Lake Region Conference of the Seventh Day Adventist Day Church (“Lake Region”), is a region based in Illinois. Lake Region governs local congregations in portions of Michigan and several other states.
 

 Until 1988, Joseph Lewis was employed by Lake Region as a minister for several Michigan churches, including Wood Street Church in Muskegon. By all accounts, Lewis’ performance as a minister was satisfactory.
 

 In the mid-1980s, disputes arose between Lewis and Lake Region over Lake Region’s handling of church finances and over Lewis’ conduct as the personal representative of an estate to which both Lewis and Lake Region were devisees. In 1986, Lake Region’s Executive Committee voted to terminate Lewis. Lewis appealed the decision to Lake Region’s governing union, the Lake Union Conference. After a hearing, the Lake Union Conference reinstated Lewis with backpay.
 

 In 1988, Lake Region’s Executive Committee again terminated Lewis. Lewis again challenged his termination, but he declined to appear before a hearing panel convened by Lake Region because of a dispute over the panel’s composition. Lewis eventually appealed the termination to the Lake Union Conference. While his appeal was pending, a meeting of Lake Region’s membership (known as “the constituency”) was held. The constituency voted to reinstate Lewis pending the outcome of his appeal. After Lewis refused to participate in his appeal before the Lake Union Conference, Lake Region’s Executive Committee terminated his salary.
 

 Lewis then filed an action for injunctive relief in Wayne County (Michigan) Circuit Court. The court did not grant Lewis any relief, but the Lake Union Conference agreed to submit Lewis’ dispute to nonbinding arbitration within the union. After a hearing, the union’s arbitration panel recommended that Lake Region reinstate Lewis and provide him with a new ministry in the region.
 

 Lake Region’s Executive Committee then appointed a subcommittee to study the matter. The subcommittee ultimately recommended that Lewis be reinstated with backpay. However, the Executive Committee did not implement the subcommittee’s recommendations, and Lewis was not reinstated.
 

 Lewis has continued to serve as minister of Wood Street Church without the authorization of Lake Region. The church has refused to accept the minister sent by Lake Region, has stopped sending tithes and offerings to Lake Region, and has paid Lewis’ salary out of the withheld monies.
 

 Lewis and his wife, Julia Lewis, filed this diversity action against Lake Region in October 1990. The Lewises’ complaint contained claims for breach of contract, promissory estoppel, intentional infliction of emotional distress, and loss of consortium.
 

 Lake Region moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), arguing that the Free Exercise Clause of the First Amendment precluded the district court from exercising jurisdiction over the Lewis-es’ claims. The district court agreed and granted the motion to dismiss.
 
 Lewis v. Lake Region Conference of Seventh Day Adventists,
 
 779 F.Supp. 72 (E.D.Mich.1991). This appeal followed.
 

 II.
 

 The First Amendment to the United States Constitution provides, in part, that “Congress shall make no law respecting an establishment of religion, or prohibiting the free - exercise thereof[.]” The Supreme Court has long held that on matters of church discipline, faith, practice, and religious law, the Free Exercise Clause requires civil courts to refrain from interfering with the determinations of the “highest of these church judicatories to which the
 
 *942
 
 matter has been carried.”
 
 Watson v. Jones,
 
 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1871).
 

 The Court most recently reaffirmed that doctrine in
 
 Serbian Eastern Orthodox Diocese v. Milivojevich,
 
 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). In
 
 Milivojevich,
 
 the Court reversed a state court ruling that had set aside a church’s decision to defrock and remove one of its clergymen. In reaching that result, the Court rejected the proposition that the church’s alleged failure to follow its own procedures opened the door for civil court review:
 

 The conclusion of the Illinois Supreme Court that the decisions of the Mother Church were “arbitrary” was grounded upon an inquiry that persuaded the Illinois Supreme Court that the Mother Church had not followed its own laws and procedures in arriving at those decisions. We have concluded that whether or not there is room for “marginal civil court review” under the narrow rubrics of “fraud” or “collusion” when church tribunals act in bad faith for secular purposes, no “arbitrariness” exception — in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with church laws and regulations — is consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. For, civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense “arbitrary” must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.
 

 Milivojevich,
 
 426 U.S. at 712-13, 96 S.Ct. at 2382 (footnote omitted).
 

 In a case remarkably similar to this one, we affirmed the dismissal of an action brought by a minister against the church that allegedly forced him into retirement by misapplying provisions of church law.
 
 Hutchison v. Thomas,
 
 789 F.2d 392 (6th Cir.),
 
 cert. denied,
 
 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). After reviewing
 
 Milivojevich
 
 and
 
 Watson,
 
 we noted that a minister’s employment relationship with his church implicates “internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law.”
 
 Hutchison,
 
 789 F.2d at 396. We concluded that civil court jurisdiction over a ministerial employment dispute was impermissible because such state intervention would excessively inhibit religious liberty.
 
 Id.
 
 Our decision in
 
 Hutchison
 
 is in accord with several recent cases in which other circuits have declined to exercise jurisdiction in employment disputes between churches and their clergy.
 
 See Natal v. Christian and Missionary Alliance,
 
 878 F.2d 1575 (1st Cir.1989);
 
 Rayburn v. General Conference of Seventh Day Adventists,
 
 772 F.2d 1164 (4th Cir.1985),
 
 cert. denied,
 
 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986);
 
 Kaufmann v. Sheehan,
 
 707 F.2d 355 (8th Cir.1983).
 

 The Lewises maintain, however, that civil courts sometimes may intervene in employment disputes between churches and clergy. They rely heavily on the Ninth Circuit’s decision in
 
 EEOC v. Pacific Press Publishing Association,
 
 676 F.2d 1272 (9th Cir.1982), in which the court exercised jurisdiction over a case involving the termination of an employee of a religious publishing house. That reliance is misplaced, however, as the
 
 Pacific Press
 
 court carefully distinguished a publishing employee’s role from that of a minister, noting that a church’s relationship with its ministers is its “lifeblood.” 676 F.2d at 1278.
 

 We conclude that the First Amendment bars civil courts from reviewing decisions of religious judicatory bodies relating to the employment of clergy. Even when, as here, the plaintiff alleges that the religious
 
 *943
 
 tribunal’s decision was based on a misapplication of its own procedures and laws, the civil courts may not intervene.
 

 The Lewises attempt to distinguish
 
 Watson
 
 and
 
 Milivojevich
 
 by arguing that the Lake Region’s constituency, not the Executive Committee, is the “highest of these church judicatories.”
 
 Watson,
 
 80 U.S. at 727. Therefore, the Lewises contend, the civil courts need not defer to the decisions of the Executive Committee. We reject this argument for two reasons.
 

 First, the argument is based on a misreading of
 
 Watson.
 
 In
 
 Watson,
 
 the Court demanded deference to the “highest of these church judicatories
 
 to which the matter has been carried.” Id.
 
 (emphasis added). Although Lake Region’s constituency reinstated Lewis pending his appeal to the Lake Union Conference, the constituency did not overturn his ultimate termination. Thus, the Executive Committee is the highest tribunal to which the matter has been carried. Second, the Lewises’ argument, if upheld, would require a civil court to conduct a review of ecclesiastical law to determine which tribunal is the highest. This is exactly the sort of inquiry that the First Amendment forbids.
 

 We find that the district court properly declined to exercise jurisdiction over the Lewises’ complaint. Accordingly, we affirm the dismissal.
 

 AFFIRMED.