Holley E. VAN OSDOL,
Plaintiff–Appellant,

v.

Hugh Frederick VOGT, individually and in his capacity as an agent of the Mile Hi Church of Religious Science; the Mile Hi Church of Religious Science, a Colorado non-profit corporation; and the United Churches of Religious Science, a California corporation, Defendants–Appellees.

No. 93CA1032.

Colorado Court of Appeals,
Div. II.

Aug. 25, 1994.

Rehearing Denied Sept. 22, 1994.

Certiorari Granted March 20, 1995.

Feiger, Collison & Killmer, P.C., Lynn D. Feiger, Gilbert M. Roman, Darold W. Killmer, Denver, for plaintiff-appellant.

The Law Firm of Leonard M. Chesler, Leonard M. Chesler, John S. Tatum, Denver, for defendant-appellee Hugh F. Vogt.

Quigley & Bruce, Neil Quigley, Denver, for defendant-appellee Mile Hi Church of Religious Science.

White & Steele, P.C., Sandra S. Coleman, Denver, for defendant-appellee United Churches of Religious Science.

Opinion by Judge TAUBMAN.

In a question of first impression, this appeal raises the viability of sexual harassment claims brought on behalf of a minister when weighed against the First Amendment rights of the minister who allegedly harassed her and that minister's church.

Pursuant to C.R.C.P. 54(b), plaintiff, Holley E. Van Osdol appeals the trial court's dismissal of seven of her thirteen claims against defendants, Hugh F. Vogt, Mile Hi Church of Religious Science (Mile Hi), and United Church of Religious Science (UCRS), based upon First Amendment grounds. We affirm and remand for further proceedings.

The facts alleged in the amended complaint are as follows.

Between 1968 and 1975, when Van Osdol was a minor, Vogt, who is Van Osdol's stepfather in addition to being a minister of Mile Hi, committed various acts of sexual assault against her when they resided together. Van Osdol did not recognize that she had suffered severe emotional distress as a result of this sexual abuse until January 1992.

In 1991, Van Osdol was a minister for UCRS in Renton, Washington, and later that year, she moved to Denver and proposed to open a new UCRS church in the southern Denver metro area. After notifying area UCRS churches and receiving no objection, UCRS granted Van Osdol a novitiate minister's license and approved her new church.

Vogt is a past president of UCRS and serves as senior minister at Mile Hi. After receiving her license and permission to open a new church, Van Osdol learned that Vogt was allegedly sexually harassing women church employees and a woman parishioner. She reported Vogt's harassment, as well as sexual abuse she had suffered from Vogt as a minor, to the UCRS officers, the highest governing body of UCRS. Thereafter, Vogt and another official at Mile Hi filed charges with the UCRS officers against Van Osdol, asserting that her allegations were false and requesting that they investigate the matter.

After an investigation, the UCRS officers revoked Van Osdol's license and denied her the opportunity to open a new church.

Thereafter, Van Osdol initiated this action against Vogt, Mile Hi, and UCRS asserting the following claims: (1) illegal retaliation in violation of the federal sexual harassment statute, 42 U.S.C. § 2000e (1988) (Title VII), against UCRS; (2) breach of fiduciary duty against Mile Hi and UCRS; (3) interference with economic advantage against Vogt and Mile Hi; (4) interference with contract against Vogt and Mile Hi; (5) and (6) breach of contract and promissory estoppel against UCRS; (7) and (8) assault and battery against Vogt; (9) outrageous conduct against Vogt, Mile Hi, and UCRS; (10) breach of fiduciary duty by a person in a position of trust against Vogt; and (11), (12), and (13) negligent hiring, supervision, and retention of Vogt against Mile Hi and UCRS. *See* Appendix A.

The trial court, *inter alia,* granted defendants' motions to dismiss the claims for retaliation, breach of fiduciary duty, interference with economic advantage, interference with contract, and negligent hiring, supervision, and retention. In so doing, the court concluded that it did not have jurisdiction to review the decisions of the church and its officials under the First Amendment and that, thus, Van Osdol had failed to state claims on which relief could be granted. The trial court granted C.R.C.P. 54(b) certification as to all of the dismissed claims except outrageous conduct.

## I. Standard of Review

In ruling on a motion to dismiss for failure to state a claim, the trial court must

accept the allegations of the complaint as true and determine whether those allegations, when viewed in a light most favorable to the plaintiff, entitle the plaintiff to relief. If relief could be granted under such circumstances, the complaint is sufficient. *Schlitters v. State,* 787 P.2d 656 (Colo.App.1989).

■ Appellate courts are in the same position as trial courts in reviewing the dismissal of claims. *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981).

## II. Title VII Retaliation

■ Presenting an issue of first impression for Colorado appellate courts, Van Osdol argues that the trial court improperly dismissed her claim alleging that UCRS terminated her license and ministry in violation of Title VII's provision prohibiting retaliation against employees who oppose practices made unlawful by it. *See* 42 U.S.C. § 2000e–3 (1988). She contends that the trial court could decide this issue without becoming entangled in religious matters protected by the freedom of religion provisions of the First Amendment. We disagree.

The First Amendment prohibits any "law respecting the establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. 1.

Title VII makes sexual harassment an unlawful employment practice. 42 U.S.C. § 2000e–2 (1988); *see Heelan v. Johns–Manville Corp.,* 451 F.Supp. 1382 (D.Colo.1978). The retaliation provision of Title VII states, in relevant part, that an employer may not discriminate against an employee:

> because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter.

42 U.S.C. § 2000e–3 (1988).

One court, considering whether a Title VII action may be brought by a minister against his or her church, stated:

> [D]etermination of whose voice speaks for the church is *per se* a religious matter.... We cannot imagine an area of inquiry less suited to a temporal court for decision; evaluation of the gifts and graces of a minister must be left to ecclesiastical insti-

tutions. This is the view of every court that has been confronted by this genre of dispute. *See, e.g., Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

In *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972), the Fifth Circuit ruled that ... [m]erely maintaining such a suit would produce an investigation and review of ... matters of church administration and government.... 460 F.2d at 558–60.

*Minker v. Baltimore Annual Conference of United Methodist Church,* 894 F.2d 1354, 1357 (D.C.Cir.1990). *Accord Serbian Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (civil court must accept ecclesiastical termination decisions of church tribunals as it finds them); *Gonzalez v. Roman Catholic Archbishop,* 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929) (civil courts may not inquire into clergy hiring decisions of church); *Watson v. Jones,* 13 Wall 679, 20 L.Ed. 666 (1872) (civil courts must give deference to religious decisions of church); *Scharon v. St. Luke's Episcopal Presbyterian Hospitals,* 929 F.2d 360 (8th Cir.1991); *Natal v. Christian & Missionary Alliance,* 878 F.2d 1575 (1st Cir.1989); *Rayburn v. General Conference of Seventh–Day Adventists, supra; McClure v. Salvation Army, supra.*

Van Osdol contends that the above cases are distinguishable since they did not involve retaliation claims and urges that the trial court need not entangle itself in religious matters in hearing this claim. However, she concedes that one of the elements required to prove retaliation is that "the decision to rescind the permission to begin the new church was causally connected to [her] opposition to illegal discrimination."

Thus, to hear this claim, the trial court would be forced to inquire into the good faith of the position asserted by the UCRS officers in revoking Van Osdol's license and ministry to determine whether their actions were retaliatory in nature, and this type of inquiry is

prohibited under the First Amendment. *Watson v. Jones, supra* (questions of discipline, faith, ecclesiastical rule, custom or law decided by the highest of the church judicatories are final and binding upon civil courts); *Minker v. Baltimore Annual Conference of United Methodist Church, supra* (whose voice speaks for the church is a *per se* religious matter); *Scharon v. St. Luke's Episcopal Presbyterian Hospitals, supra* (very process of inquiring into church-made decisions violates First Amendment); *Rayburn v. General Conference of Seventh–Day Adventists, supra* (First Amendment protects the act of a decision rather than the motivation behind it). *Cf. Alberts v. Devine,* 395 Mass. 59, 479 N.E.2d 113 (1985) (where church violated physician-patient confidentiality by obtaining information from minister's psychiatrist regarding his fitness to continue as a minister, court could properly inquire into church processes).

Van Osdol also contends that public policy warrants reinstatement of her Title VII claim because to deny it would chill the eradication of unlawful discrimination against non-ministerial employees within religious institutions. Despite what may be a legitimate policy concern, the overwhelming majority of case law prevents secular courts from inquiry into a church's motivation in rejecting or terminating a minister. Had Van Osdol been an employee other than a minister, the result might be different. *See E.E.O.C. v. Fremont Christian School,* 781 F.2d 1362 (9th Cir. 1986); *E.E.O.C. v. Pacific Press Publishing Ass'n,* 676 F.2d 1272 (9th Cir.1982); *E.E.O.C. v. Mississippi College,* 626 F.2d 477 (5th Cir.1980).

■ Thus, we adopt the reasoning presented in *Milivojevich* and its progeny and conclude that decisions by a church judicatory and its officials concerning the essential qualifications of clergy, although affecting civil rights, must be accepted as conclusive. *See Young v. Northern Illinois Conference of United Methodist Church,* 21 F.3d 184 (7th Cir.1994) (free exercise clause of First Amendment precludes jurisdiction over Title VII claim of probationary minister). Accordingly, we conclude that the trial court properly dismissed Van Osdol's claim for retaliation under Title VII.

### III. Intentional Torts

■ We also disagree with Van Osdol's contention that the trial court improperly dismissed her claims for breach of fiduciary duty against UCRS and intentional interference with prospective economic advantage and contract against Mile Hi and Vogt.

Van Osdol's complaint alleges that UCRS failed fully to investigate the charges of sexual abuse and harassment brought by her against Vogt. Thus, she contends, UCRS breached a fiduciary duty of impartiality owed to her. Van Osdol also alleges in her complaint that Mile Hi and Vogt intentionally interfered with her prospective economic advantage and contract when Vogt filed false charges against her with the UCRS officers. We disagree with these contentions.

Further, Van Osdol asserts that because the defendants' actions were not based upon sincerely held religious beliefs but were taken for secular purposes, a determination of these claims would not entangle the trial court in protected First Amendment rights.

However, this test has been applied only in situations involving irregular practices during pastoral counseling. One example is *Destefano v. Grabrian,* 763 P.2d 275 (Colo. 1988). There, the claim against the priest focused on improper sexual relations with a parishioner during marital counseling. The supreme court examined the minister's conduct in the context of church doctrine and beliefs.

Significantly, in *Destefano,* the priest and the church admitted that the minister's conduct expressly violated his vow of celibacy and was not based on church policy or sincerely held religious beliefs.

Here, Van Osdol's claims are not based upon a lack of sincerely held religious beliefs, spiritual counseling, or improper conduct by a minister in a counseling relationship with a parishioner. Rather, they focus on the church's reasons for rescinding her novitiate minister's license and ministry and, thus, implicate church policy. Accordingly, we reject

Van Osdol's contention that *Destefano* applies to the facts here.

In support of her position, Van Osdol points to the statement in *Serbian Orthodox Diocese v. Milivojevich, supra,* 426 U.S. at 713, 96 S.Ct. at 2382, 49 L.Ed.2d at 165, that there is an exception permitting " 'marginal civil court review' under the narrow rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes." However, in that case the Supreme Court noted that "no decision of this Court has given concrete content to or applied the 'exception.' " *Serbian Orthodox Diocese v. Milivojevich, supra,* 426 U.S. at 712, 96 S.Ct. at 2382, 49 L.Ed.2d at 164.

In *Milivojevich,* moreover, the Supreme Court merely suggested that a claim *might* lie in instances of fraud or collusion when tribunals act in bad faith for secular purposes. In *Hutchison v. Thomas,* 789 F.2d 392 (6th Cir.1986), the court similarly declined to endorse the propriety of a fraud or collusion claim, finding that such a claim did not exist under the circumstances presented. The *Hutchison* court cautioned that such a claim could only lie "for fraud or collusion of the most serious nature undermining the very authority of the decision-making body." *Hutchison v. Thomas,* 789 F.2d at 395.

Here, Van Osdol does not expressly allege fraud or collusion in her amended complaint. To the extent her amended claim may be read as asserting a claim for collusion, following *Hutchison,* we conclude that any collusion alleged does not undermine the very authority of UCRS' and Mile Hi's decision-making bodies.

Furthermore, we are reluctant to predicate an otherwise prohibited claim on allegations of collusion. If we were to do so, any time a minister and a church were alleged to have acted in concert, a collusion claim could be asserted that would effectively circumvent the First Amendment concerns the Supreme Court expressed in *Milivojevich, supra.*

Relying on *Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994), Van Osdol alternatively contends that we may follow the "neutral principles" doctrine and apply a secular standard to tortious secular conduct without running afoul of the First Amendment. The *Moses* court held that civil actions against clergy predicated on breach of fiduciary duty, negligent hiring and supervision, and vicarious liability are constitutionally viable if they are supported by competent evidence in the record.

The essential element in Van Osdol's intentional tort claims is that UCRS failed to act with impartiality in reviewing and investigating her charges. Here, however, unlike in *Moses v. Diocese of Colorado, supra,* and *Destefano v. Grabrian, supra,* a determination of this element would require the trial court to examine the UCRS officers' reasons for terminating Van Osdol's license and denying her ministry in the new church. In both *Moses* and *Destefano,* the evidence of a fiduciary relationship and actions taken under this relationship did not require inquiry into a decision of whether to employ the ministers in question.

As we have concluded above, such an examination would require inquiry into the good faith of the church's determinations with regard to one of its ministers. Such an inquiry constitutes a clear violation of rights protected by the First Amendment. *See, e.g., Serbian Orthodox Diocese v. Milivojevich, supra.*

Thus, we hold that the First Amendment interests in protecting the sanctity of church decisions prohibits review.

## IV. Negligence Torts

Van Osdol further argues that the trial court improperly dismissed claims of negligent hiring, supervision, and retention against UCRS and Mile Hi. We conclude that the trial court properly dismissed these claims.

### A. Negligent Hiring

An employer may be liable for harm to others for negligently employing an improper person for a task that may involve risk to others. *Moses v. Diocese of Colorado, supra; Connes v. Molalla Transport System, Inc.,* 831 P.2d 1316 (Colo.1992). If sufficient evidence is presented to demonstrate that a church structure creates an agency relationship between the minister and the church, then the church may be liable under this

theory of recovery. *See Destefano v. Grabrian, supra.*

Here, the complaint alleges an agency relationship between Vogt, Mile Hi, and UCRS. Neither Mile Hi nor UCRS denies that an agency relationship exists, but they contend that examination of this claim would entangle the trial court in protected First Amendment issues.

Van Osdol makes four allegations against Mile Hi and UCRS as the basis for this claim.

■ First, the complaint alleges that, before he began employment with Mile Hi, Vogt had been involved in an extra-marital affair with a parishioner at another church and that Mile Hi and UCRS failed to investigate this allegation. The trial court dismissed this part of Van Osdol's claim on the basis that there was an insufficient nexus of foreseeability between the extra-marital affair and the alleged sexual harassment and abuse.

We agree with the trial court's conclusion that the extra-marital affair was sufficiently different from Van Osdol's allegations against Vogt and, thus, did not create a duty on the part of the church to foresee Vogt's conduct. *See Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo.1987) (foreseeability is generally considered by the trial court in determining whether a duty exists in a negligence claim).

■ Second, we agree with the trial court that Van Osdol does not have standing to raise sexual harassment of parishioners of Mile Hi and UCRS as a basis for a claim of negligent hiring. To have standing, the plaintiff must demonstrate that an injury in fact to plaintiff's legally protected interest resulted from the wrong alleged. *Yellow Cab Cooperative Ass'n v. Public Utilities Commission,* 869 P.2d 545 (Colo.1994). She may not raise a claim on behalf of other parishioners.

■ Third, Van Osdol asserts as part of her negligent hiring claim that Vogt used his "cloak of authority" to retaliate against her and to terminate her for reporting to UCRS allegations of sexual abuse and sexual harassment committed by Vogt. We affirm

the trial court's dismissal of this aspect of plaintiff's negligent hiring claim for the same reasons we rejected plaintiff's Title VII retaliation claim.

Finally, plaintiff alleges that as a result of negligent hiring of Vogt by UCRS and by Mile Hi, Vogt used his "cloak of authority" to sexually abuse plaintiff. The trial court rejected this claim on the ground that the allegations of the complaint demonstrated conduct not perpetrated under a church "cloak of authority," but rather within a stepparent relationship.

We disagree with plaintiff that this part of her claim for negligent hiring should be reinstated. Plaintiff alleges that, by virtue of Vogt's "cloak of authority" as a minister, resulting from his negligent hiring, he was able to sexually abuse his stepdaughter.

During the period this alleged sexual abuse occurred, plaintiff was not a minister; she was more akin to the parishioners involved in *Destefano, supra* and *Moses, supra.* Nonetheless, plaintiff does not allege that Mile Hi or UCRS knew or should have known of Vogt's alleged sexual abuse of his stepdaughter when they hired him. Accordingly, this part of Van Osdol's claim for negligent hiring was properly dismissed.

B. Negligent Supervision and Retention

Van Osdol contends that the trial court improperly dismissed her claims for negligent supervision and retention because the court would not be required to inquire into the church's decision-making processes. We disagree.

■ An employer may be subject to liability for negligent supervision and retention if the employer knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm. *Moses v. Diocese of Colorado, supra; Destefano v. Grabrian, supra.*

■ Van Osdol's complaint makes three separate allegations in her claims of negligent supervision and negligent retention. First, she asserts that Vogt was given the cloak of authority to sexually harass, abuse, and intimidate parishioners of UCRS. We affirm the dismissal of this part of these claims, as we affirm the similar allegations of

the negligent hiring claim, on the ground that plaintiff lacks standing to raise the claims of others.

■ Second, the complaint alleges that Vogt used his "cloak of authority" to retaliate against plaintiff for her reporting of his alleged sexual abuse. Again, we affirm the trial court's dismissal of this aspect of these claims for the reasons stated above with respect to the negligent hiring claim.

■ Third, the complaint asserts that Vogt used his "cloak of authority" to sexually abuse Van Osdol. However, plaintiff alleges that UCRS, and possibly Mile Hi, did not know of Vogt's alleged sexual abuse until June 29, 1992. Additionally, Van Osdol does not allege that after that date she was subject to an unreasonable risk of harm as a result of Vogt's continued employment. Under these circumstances, we conclude that Van Osdol's negligent supervision and negligent retention claims were properly dismissed.

Accordingly, the trial court's judgment of dismissal is affirmed, and the cause is remanded for further proceedings on Van Osdol's remaining claims.

STERNBERG, C.J., and CRISWELL, J., concur.

## APPENDIX A