Shula G. ELBAZ, Plaintiff,

v.

CONGREGATION BETH JUDEA, INC., an Illinois not-for-profit corporation, Defendant.

No. 92 C 1352.

United States District Court, N.D. Illinois, E.D.

July 6, 1992.

Mark S. Simon, Chicago, IL, for plaintiff.

Orin S. Rotman, Stein and Rotman, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Defendant Congregation Beth Judea, Inc. ("Congregation") seeks to dismiss plaintiff Shula G. Elbaz' one-count complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Elbaz' complaint alleges that the Congregation's failure to renew her employment contract constituted retaliatory discrimination prohibited by Title VII, 42 U.S.C. §§ 2000e to e–17 (1988),[1] and the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1988).[2] The Congregation claims that dismissal is proper for lack of subject matter jurisdiction and failure to state a cause of action. For the reasons set forth below, the motion is denied.

### I.

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as all reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

### II.

Elbaz is a citizen of the United States whose country of national origin is Israel. She was employed by the Congregation, an Illinois not-for-profit corporation, from July

---

1. Specifically, § 2000e–3(a), which provides, in pertinent part, that

   [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

   42 U.S.C. § 2000e–3(a).

2. Specifically, § 215(a)(3), which, in relevant part, provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding...." 29 U.S.C. § 215(a)(3).

1, 1978 through June 30, 1991. As its education director, Elbaz administered a religious school for the children of members of the Congregation.

On or about October 25, 1990, Elbaz complained to her superiors about what she perceived to be discriminatory treatment. Specifically, she objected to the Congregation's practice of not timely making its employer contributions to her retirement plan, particularly as compared to its timely contributions to the retirement plans of the Congregation's rabbi and cantor—both of whom were male, non-Israeli employees. Six weeks later (on or about December 12, 1990), unsatisfied with the Congregation's reaction to her complaints, Elbaz directed her attorney to demand that the Congregation remedy its discriminatory treatment. Within days (on or about December 20, 1990), the Congregation verbally informed Elbaz that it would not renew her employment contract. On June 30, 1991, Elbaz' term of employment expired and she was terminated.

Elbaz maintains that this failure or refusal to renew her employment contract was in retaliation for her retirement plan complaints. On or about August 30, 1991, she filed charges against the Congregation with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"), alleging discrimination based on sex and national origin. She claims that she was not properly compensated according to contractual provisions dealing with severance pay, vacations, work-related expenses, and salary, that she was not compensated for her 1990–91 pension contributions (although the rabbi and cantor were), and that she was demeaningly referred to as "the 'Israeli.' " The EEOC issued a right to sue notice on November 29, 1991, which Elbaz received on December 16, 1991. She brought the instant action on February 21, 1992.

### III.

The Congregation offers five arguments in support of its motion to dismiss, which we address in turn:

(1) *Untimeliness of Charge.* The Congregation contends that Elbaz' charge of discrimination was untimely filed, and that this untimeliness dooms her complaint (at least as to its Title VII component) because it constitutes a "failure of the prerequisite of jurisdiction." Memorandum at 3. The argument is that 42 U.S.C. § 2000e–5(c) and (e) impose certain filing requirements for "jurisdictional purposes." *Id.*

As a general proposition, § 2000e–5(e) provides that an aggrieved person must make a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. However, if the charge is initially instituted with an appropriate state or local agency, the aggrieved person has 300 days within which to file with the EEOC. To avoid premature federal intervention, § 2000e–5(c) provides that a charge may not be filed with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated...."

Given the 60–day waiting period in § 2000e–5(c), which the Supreme Court has determined must be tacked on to the actual EEOC filing date, *Mohasco Corp. v. Silver,* 447 U.S. 807, 817, 100 S.Ct. 2486, 2492–93, 65 L.Ed.2d 532 (1980), the Congregation argues that Elbaz tarried too long, having waited either 313 days (based on December 20, 1990) or 369 days (based on October 25, 1990) to file with the EEOC. Because Elbaz' filing was not timely, the argument concludes, this court lacks subject matter jurisdiction over her federal suit.

The fundamental flaw in the Congregation's thesis is its notion that Title VII's filing requirements are jurisdictional. They are not. Indeed, the Congregation's attorney skirts dangerously close to Rule 11 thin ice in making that argument, because the Supreme Court soundly rejected it a decade ago:

We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a

statute of limitations, is subject to waiver, estoppel, and equitable tolling....

... The provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982); *see also Sofferin v. American Airlines, Inc.*, 713 F.Supp. 1219, 1226 (N.D.Ill.1989) (citing *Zipes*), *aff'd, in part, rev'd, in part*, 923 F.2d 552 (7th Cir.1991). The Congregation's attorney fails to cite either *Zipes* or *Sofferin* (and also fails, as might be guessed, to argue that there is a sound basis for limiting or overturning those decisions with respect to the jurisdiction issue), but, then again, so does Elbaz' counsel. The bottom line is that neither attorney, but especially the Congregation's, appears to have reasonably inquired into the existing law in this area, a situation we will closely monitor as this suit progresses.

Additionally, we count 253 days in the period between December 20, 1990 and August 30, 1991, a span of time that may well constitute timely filing without resort to an inquiry into waiver, estoppel, or equitable tolling principles. Apparently, the IDHR and the EEOC have a "work-sharing agreement whereby the IDHR will waive its exclusive 60–day right to process charges initially processed by the EEOC upon notification and deferral of the charge to the IDHR by the EEOC." *Sofferin*, 713 F.Supp. at 1224;[3] *see also* Complaint ¶ 9 (Elbaz filed charges with IDHR "pursuant to a work sharing agreement" it and the EEOC). While the precise parameters of the instant situation are not set forth by the parties (and might well be inappropriate in a dismissal context anyway), "[a] state agency's waiver of its exclusive [§ 2000e–5(c) ] 60–day period ... pursuant to a work-sharing agreement with the

EEOC, is a termination within the meaning of § [2000e–5(c) ] and thereafter the EEOC immediately may deem the charge filed." *Sofferin*, 713 F.Supp. at 1224 (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 125, 108 S.Ct. 1666, 1676, 100 L.Ed.2d 96 (1988)). In other words, the IDHR's work-sharing agreement with the EEOC may well be a § 2000e–5(c) termination such that Elbaz is within the 300–day § 2000e–5(e) "statute of limitations"-type filing period.

In any event, we would not dismiss the complaint on the basis of the Congregation's ill-conceived jurisdictional argument. And given the state of the law regarding state agency work-sharing agreements and termination, a summary judgment argument (as in *Sofferin* ) is not likely to succeed, either.

(2) *Congregation as Employer.* The Congregation maintains that "Elbaz has failed to allege in the complaint that Congregation Beth Judea is an 'employer' as defined in 42 U.S.C. [§] 2000e(b) or to allege any facts which might lead to that conclusion." Memorandum at 4. In pertinent part, § 2000e(b) defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." To the extent that the Congregation's "challenge" is merely a contention that Elbaz' complaint fails to contain a necessary allegation, it is rejected, since Elbaz' charge of discrimination, Complaint Exh. B, asserts that the Congregation has twenty-five employees.

To the extent, however, that the Congregation actually contests Elbaz' claim that it is a § 2000e(b) employer, this is a factual question that cannot be decided in a motion to dismiss. Thus, while we reject the most obvious interpretation of the Congregation's contention here, and find that Elbaz meets any sort of cursory challenge, the

---

**3.** It may be that a work-sharing agreement constitutes a kind of automatic waiver, even *without* a deferral by the EEOC. That question prompted the Seventh Circuit to remand *Sofferin* for an evidentiary hearing to ascertain "whether the worksharing agreement provides for waiver of the right to initially institute proceedings at the time of the worksharing agreement itself, or at the time of the review of the IDHR agent." 923 F.2d at 560.

Congregation may, of course, move for summary judgment, if it wishes, on the explicit argument that it is not, in fact, a § 2000e(b) employer.

(3) *Suit Beyond Scope of EEOC Charge.* The Congregation insists that Elbaz' complaint "should be dismissed as being beyond the scope of the charge of discrimination and thus being barred by the failure ... to exhaust administrative remedies." Memorandum at 4. Requiring an EEOC charge to be filed gives the EEOC " 'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' " *Babrocky v. Jewel Food Co. & Retail Meatcutters Union, Local 320,* 773 F.2d 857, 863 (7th Cir.1985) (quoting *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir.1983)). Accordingly, it follows that allegations in a federal suit "outside the ambit of the predicate EEOC charge" would be improper, circumventing, among other things, the possibility of administrative relief. *Id.*

■■■ The relationship between allegations in the complaint and those presented in the EEOC charge is not, as the Congregation notes, strictly construed. In other words, "[a]ll claims of discrimination are cognizable that are *'like or reasonably related to* the allegations of the charge and growing out of such allegations.' " *Id.* at 864 (citations omitted; emphasis added). Here, there can be little doubt that Elbaz' complaint is like or reasonably related to the allegations contained in her EEOC charge. She identifies the date of the act of discrimination, December 20, 1990, and her belief that the discrimination was predicated on impermissible factors, namely sex and national origin. Her claim in the charge of unexplained termination after twelve years of employment is sufficient for her retaliatory discharge complaint to withstand dismissal.

Finally, the receipt of a right to sue letter from the EEOC evidences the fact the Elbaz has exhausted her administrative remedies. The Congregation does not suggest what administrative remedies remain unexhausted, and we see none.

(4) *Disparate Treatment.* The Congregation argues that "Elbaz founds her action on the timing of a contribution to a pension plan and attempts to bootstrap that into a Title VII violation by comparing the timing of that payment to unspecified alleged payments to pension plans of ... the Rabbi and the Cantor of the Congregation." Memorandum at 5. Because Elbaz does not allege unlawful disparate treatment, the Congregation asserts that dismissal is proper.

■■■ The Congregation's argument misconstrues the nature of Elbaz' claim. Elbaz is not asserting an equal pay for equal work claim, as was the plaintiff in *Forsberg v. Pacific Northwest Bell Tel. Co.,* 840 F.2d 1409 (9th Cir.1988). Rather, she is complaining of retaliatory discharge in violation of Title VII and the Fair Labor Standards Act. It is her position that opposition to allegedly discriminatory treatment is protected by those federal laws. Allegations of retaliatory conduct under both 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 215(a)(3) need not prove that an employment practice actually violated those statutes. Indeed, "it is a violation of 42 U.S.C. § 2000e–3(a) to fire an employee because he opposed discrimination against a fellow employee, even if he was mistaken and there was no discrimination.... [I]t is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case." *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir.1982). Similarly, in *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir. 1975), the plaintiff's "protest of what she believed to be unlawful conduct on [her employer's] part was an act protected from reprisals and rendered her firing discriminatory...." *Id.* at 181. "To hold otherwise," the court concluded, "would defeat the [Fair Labor Standards] Act's purpose in § 215(a)(3) of preventing employees' attempts to secure their rights under the Act from taking on the character of 'a calculated risk.' " *Id.* (citation omitted).

Because Elbaz need not show that her position as education director is substan-

tially equal to that of rabbi or cantor, we reject the Congregation's *Forsberg*-based argument for dismissal.

(5) *Exemption of Acts.* The Congregation's fifth and final argument is that it is exempt from the dictates of Title VII pursuant to § 2000e–2(e), and, perhaps more fundamentally, that any attempt by this court to "restrain a synagogue's free choice of its religious education personnel would constitute an infringement on the synagogue's free exercise of rights protected by the First Amendment." Memorandum at 6.

As a general proposition, 42 U.S.C. § 2000e–1 exempts "religious corporation[s] ... with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation ... of its activities." Notwithstanding that generality, however, "Title VII does not confer upon religious organizations a license to make [relevant hiring] decisions on the basis of race, sex, or national origin." *Rayburn v. General Conference of Seventh–Day Adventists*, 772 F.2d 1164, 1166 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). By its very terms, § 2000e–1 "applies only to discrimination on the basis of religion. The ban on discrimination in employment on account of race, national origin, or sex is still applicable to [religious] organizations." Arthur Larson & Lex K. Larson, *Employment Discrimination* § 5.37(b), at 2–106 (1992)

[hereinafter *Employment Discrimination*].

■ The language of 42 U.S.C. § 2000e–2(e)(2) specifically extends the religious corporation exemption to religious educational institutions: [4]

it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. § 2000e–2(e)(2). Again, though, it is religious discrimination that (in proper situations) is not prohibited; § 2000e–2(e)(2) does not permit discrimination on the basis of sex, race, or national origin. *Employment Discrimination* § 5.37(b), at 2–108.

■ The First Amendment issue can also be rejected. The "application of Title VII's race and sex discrimination ban to non-ministerial employees does not violate the First Amendment." *Id.* § 5.37(b), at 2–112 & n. 25 (citing cases). *Rayburn*, cited by the Congregation, involved an applicant for

---

**4.** Although the Congregation describes itself as a "bona fide religious institution," Memorandum at 6, we do not take this to be an argument that its employment decision regarding Elbaz is justified under § 2000e–2(e)(1), which permits hiring discrimination based on sex, race, or national origin if one of those factors is a "bona fide occupational qualification reasonably necessary to the normal operation of th[e] particular business or enterprise." Elbaz, after all, worked for the Congregation for 13 years; as the Congregation admits, in the context of its flawed disparate treatment argument, "Elbaz was always a female, Israeli employee." Memorandum at 5. Thus, the Congregation would be hard pressed to show that Elbaz' gender or national origin could legitimately be used against her under § 2000e–2(e)(1) after more than a decade of employment.

Moreover, the so-called "BFOQ" defense is both written and construed narrowly. *Interna-*

*tional Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, —— U.S. ——, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991); *Torres v. Wisconsin Dep't of Health & Social Servs.*, 859 F.2d 1523, 1527 (7th Cir.1988), *cert. denied*, 489 U.S. 1017, 1082, 109 S.Ct. 1133, 1537, 103 L.Ed.2d 194, 841 (1989). "The wording of the BFOQ defense [in § 2000e–2(e)(1)] contains several terms of restriction.... [and e]ach of these terms—certain, normal, particular—prevents the use of general subjective standards and favors an objective, verifiable requirement. But the most telling term is 'occupational'; this indicates that these objective, verifiable requirements must concern job-related skills and aptitudes." *Johnson Controls*, —— U.S. at ——, 111 S.Ct. at 1204. Given this narrowness, we find the Congregation's implicit reliance on § 2000e–2(e)(2), notwithstanding its "bona fide" reference, proper and wise.

a pastoral position, 772 F.2d at 1165, and is thus distinguishable from the instant case. This court's adjudication of strictly sex- or national origin-based discrimination issues would not to any degree entangle us in the Congregation's religious mission, doctrines, or activities, and thus would not violate the religion clauses of the First Amendment. *See Dolter v. Wahlert High School,* 483 F.Supp. 266, 270–71 (N.D.Iowa 1980). The Congregation admits as much, we think, in claiming that Elbaz was fired because her "methodology and priorities and independence" regarding "the instruction, curriculum, program, and administration of the religious school no longer met the requirements of the Congregation," Memorandum at 6—a claim that may lend itself to a summary judgment motion, but one which can hardly be said to be evidence of either permissible religious discrimination or an indication that our involvement would constitute impermissible judicial entanglement.

■ The Congregation also asks that Elbaz' request for a jury trial be stricken. Elbaz is, of course, entitled to a jury trial on her Fair Labor Standards Act claims, as set forth in 29 U.S.C. § 216(b)(2). *See EEOC v. Chicago Housing Authority,* 725 F.Supp. 392, 395 (N.D.Ill.1989) (Congress "clear[ly] ... intended to allow for a jury trial in actions for violations of § 215(a)(3)"). While it is true that Title VII did not formerly provide a right to trial by jury, *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981), the Civil Rights Act of 1991 does provide for a jury trial in Title VII cases. Lex K. Larson, *Civil Rights Act of 1991,* 7 (1992). Given Elbaz' right to a jury trial on her Fair Labor Standards Act claims and the fundamental fact that she filed the instant suit *after* the effective date of the 1991 Act, we deny the Congregation's motion to dismiss the jury trial request.

### IV.

The Congregation's motion to dismiss the complaint and to strike Elbaz' jury trial demand is denied. It is so ordered.