**Darreyl N. YOUNG, Plaintiff,**

v.

**The NORTHERN ILLINOIS CONFERENCE OF UNITED METHODIST CHURCH, The Board of Ordained Ministry, and R. Sheldon Duecker, as the presiding Bishop of The Board of Ordained Ministry, Defendants.**

**No. 92 C 7202.**

United States District Court,
N.D. Illinois, E.D.

April 19, 1993.

Gerald A. Goldman, Arthur R. Ehrlich, Goldman & Marcus, Chicago, IL, for plaintiff.

Samuel W. Witwer, Jr., Gregory Nathan Freerksen, Jennifer Kae Poltrock, Witwer, Burlage, Poltrock & Giampietro, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted.

### FACTS

Plaintiff Darreyl N. Young ("Young"), a female black African–American, served as a probationary minister for the United Methodist Church in Chicago, Illinois. For four years she acted as a pastor and preached sermons for the church in this capacity. According to the complaint, she received excellent references and ratings from her superiors during those four years. When Young applied for a position as "Elder," or "Clergy Member in Full Connection," ("Elder") within the Methodist Church, she received a favorable recommendation from her supervisor for this position. In response to Young's application for the position of Elder, the defendants Northern Illinois Conference of United Methodist Church, the Board of Ordained Ministry (the "Board"), and the Board's presiding bishop, R. Sheldon Duecker (collectively, "defendants") established a panel to review Young's application. Young maintains that there were no black female members on this review panel. On March 24, 1992 the defendants denied Young the appointment as an Elder on her first attempt, and discontinued Young as a minister in the church without recommending that Young's status as a probationary minister continue. The Board rejected, although it had available, the favorable recommendation of Young's supervising Elder. Young additionally asserts that, although it is a qualification for becoming an Elder that the applicant have preached or given a sermon in the past, the defendants criticized Young's preaching skills without having the benefit of ever hearing her sermons. Young does not allege whether there are any black African–American or female Elders in the church.

Young filed suit on October 29, 1992 alleging that the defendants' actions constituted sex and race discrimination, and were taken in retaliation for her advocacy of minority rights and her vocal criticism of the church on minority issues, all in violation of 42 U.S.C. § 2000e, et seq. ("Title VII"). After Young filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC"), the EEOC entered a final decision on July 30, 1992, and issued a right to sue letter around August 1992.

Young claims that other probationary ministers seeking appointment as an Elder have always had representatives of their sex and

race on the Board's review panel; that the Board has never discontinued other probationary members on their first attempt to obtain the Elder position; and that the Board always followed the recommendation of supervising Elders when making the promotion determination. As a consequence of the Board's determination, Young has been removed from her church and has been denied any opportunity for advancement within the Methodist Church. Young seeks in this suit, in addition to compensatory and punitive damages for her loss of pay and her emotional distress, that the court order her reinstatement as a probationary minister and that the court order a new review of her application for the Elder position in accordance with the defendants' "usual and customary practices...."

Concerned with the requested relief, the defendants filed the present motion to dismiss on November 20, 1992. Defendants primarily assert that the court is without jurisdiction to adjudicate the claims brought against them and also that the complaint fails to state a claim.

## DISCUSSION

Lack of subject matter jurisdiction is appropriately raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989), *cert. denied*, 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). Additionally, the court will grant a motion to dismiss for failure to state a claim if there is no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir.1992). The court accepts the allegations in Young's complaint as true without, of course, vouching for their veracity as it must when deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991).

The defendants' position is that granting Young's request for relief in this case would violate the first amendment's protection of the free exercise of religion and thus the first amendment deprives the court of jurisdiction over Young's claims. The court should avoid the constitutional question. Indeed, federal courts are counseled to skirt constitutional questions if reaching them is unnecessary to deciding the case. *See International Ass'n*

*of Machinists v. Street*, 367 U.S. 740, 749–50, 81 S.Ct. 1784, 1789–90, 6 L.Ed.2d 1141 (1961). Nevertheless, if the defendants are employers engaged in an industry affecting commerce within the breadth of § 701(b), (f), and (h) of Title VII, 42 U.S.C. § 2000e(b), (f), (h), and sex or race entered the decision to discontinue Young as a probationary minister, then this would activate Title VII's edicts. Therefore, a potential conflict with the religion clauses of the first amendment becomes apparent because the court's adjudication of a sex- or race-based discrimination claim in this instance may substantially entangle the court in the church's religious mission, doctrines, activities, and hierarchy. *Dolter v. Wahlert High School*, 483 F.Supp. 266, 270–71 (N.D.Iowa 1980). The complaint reveals that the relief Young requests includes an order to reinstate Young to her probationary ministerial position and force the defendants to conduct a new review of her application for the Elder position in the Methodist Church. Presumably this would include ordering the makeup of the committee as suggested by Young.

This creates a predicament. By granting Young relief, the court may be getting entangled in the religious affairs of the defendants. On the other hand, courts cannot immunize from governmental regulations all types of religious activity, especially from laws designed to protect health, safety, morality, and the general welfare. *See* Gary C. Leedes, *Court-Ordered Exemptions to Secure Religious Liberty*, 21 U.RICH.L.REV. 335, 338 (1987). It cannot be denied that there exists a strong federal interest and court commitment to eradicating discrimination in this country. *Cf. Roberts v. United States Jaycees*, 468 U.S. 609, 621–23, 104 S.Ct. 3244, 3251–53, 82 L.Ed.2d 462 (1984) (state's interest in eliminating discrimination outweighed Jaycees' freedom of association); Susan L. Pacholski, *Title VII in the University: The Difference Academic Freedom Makes*, 59 U.CHI.L.REV. 1317, 1318 (1992) (Title VII's policy of "complete relief" would be subverted by undue deference to a university's right to academic freedom). It is the clash between social legislation aimed at remedying discrimination and first amendment rights that is the concern in the present case.

■ The court should first determine whether there is a clear expression of an affirmative intention of Congress that religious organizations are covered by Title VII. *See N.L.R.B. v. Catholic Bishop of Chicago,* 440 U.S. 490, 504, 99 S.Ct. 1313, 1320, 59 L.Ed.2d 533 (1979). The court concludes that it is not deprived of jurisdiction to entertain Title VII claims merely because the defendants are religious entities. The statute recognizes that claims for discrimination in employment on account of race, national origin, or sex are cognizable against religious entities. *Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1166 (4th Cir.1985) ("Title VII does not confer upon religious organizations a license to make [hiring decisions] on the basis of race, sex, or national origin"), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *E.E.O.C. v. Pacific Press Pub. Ass'n,* 676 F.2d 1272, 1278 (9th Cir.1982) (Title VII applied to editorial secretary position in non-profit religious publishing house); *E.E.O.C. v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 287 (5th Cir.1981) (Title VII applicable to administrative and support staff of seminary), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982); *E.E.O.C. v. Mississippi College,* 626 F.2d 477, 486–89 (5th Cir.1980) (secular teacher in church-approved school), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); *Elbaz v. Congregation Beth Judea, Inc.,* 812 F.Supp. 802, 803–04 (N.D.Ill.1992) (education director for religious school); *Whitney v. Greater N.Y. Corp. of Seventh–Day Adventists,* 401 F.Supp. 1363, 1368 (S.D.N.Y.1975) (typist-receptionist for Seventh–Day Adventist Church). This is so because Congress only exempted religious organizations, entities, or educational facilities from claims based on *religious discrimination* and only under certain limited circumstances. *See* 42 U.S.C. §§ 2000e–1, 2000e–2; *Pime v. Loyola University of Chicago,* 803 F.2d 351, 357–58 (7th Cir.1986). This exemption did not cover race-, national origin-, or sex-based claims. This evidences that Congress intended Title VII to apply to religious entities with only some specific exemptions. *See Rayburn,* 772 F.2d at 1167 (wording of statute and history behind it examined).

■ No other construction of Title VII will remove the constitutional question. *See Machinists,* 367 U.S. at 749–50, 81 S.Ct. at 1789–90. Although the parties never addressed whether the defendants in this case were collectively acting as employers under Title VII in making the promotion decision or whether Young is an employee, it is conceivable that church officials are not acting as "employers" within the definition of Title VII when making pastoral decisions, and that ministers are not "employees" in the traditional sense. Nevertheless, § 701 defines employer and employee broadly. *Chavero v. Local 241, Division of Amalgamated Transit Union,* 787 F.2d 1154, 1156 (7th Cir.1986). At least one court believes that religious entities are employers engaged in an industry affecting commerce under Title VII. *McClure v. Salvation Army,* 460 F.2d 553, 554 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972). Furthermore, the complaint does not describe the duties of a probationary minister or an Elder, and the complaint reveals that Young received compensation for her services. Accordingly, the court assumes that a traditional employer-employee relationship existed. Therefore, there is no other construction of the statute that is fairly possible by which the court can avoid the constitutional question.

As a consequence, it becomes Title VII's application to Young's employment as a minister that is at issue. The case law suggests that the application of Title VII's race and sex discrimination ban is limited to *non-clergy* employees of religious organizations. *See Rayburn,* 772 F.2d at 1165 (involving applicant for a pastoral position); *McClure,* 460 F.2d at 554–55 (ordained minister); *see also* A. Larson & L. Larson, Employment Discrimination ¶ 5.37(b) at 2–112 & n. 25 (citing cases). These decisions rest on the assumption that an application of the law to these church positions would violate the first amendment. The reasoning of these decisions is also that courts may not question a church's rulings on matters of religious doctrine or authority. *See Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); *Kedroff v. St.*

*Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

In the present case, however, there are no religious beliefs specifically at issue. For instance, the complaint does not facially attack the Methodist Church's view, if any, that females or black African–American individuals cannot obtain the Elder position. Assuming the facts are in Young's favor, female black African–American Elders are present in the Northern Illinois Conference of United Methodist Church and there is no denominational bar to their presence. It is merely because the instant hiring decision was allegedly based on impermissible factors that Young asserts her claim in the courts. Furthermore, it is Young's position that the court is not getting tangled in a religious morass but is solely reviewing secular aspects of the defendants' decision. In other words, by requiring the defendants to follow their customary employment procedures, which do not involve ecclesiastical considerations, the court is merely concerning itself with secular procedural matters and is granting Young secular relief. Therefore, Young maintains, the case does not concern church doctrine.

Young supports her position with *Kaufmann v. Sheehan,* 707 F.2d 355, 358–59 (8th Cir.1983). In that case the Eighth Circuit observed that a narrow "fraud" or "collusion" exception to the bar of civil court review of church tribunals may not entirely foreclose actions brought against a church. *Id.* at 358. Nevertheless, even the *Kaufmann* court held that that possible exception was inapplicable because the plaintiff was a priest, and the complaint concerned matters involving church hierarchy. *Id.* at 358–59. The court determined those issues did not deal with secular matters. *Id.* "While there may be some secular aspects to employment and conceivably even to the priesthood or clergy, it is apparent that the priest or other member of the clergy occupies a particularly sensitive role in any church organization." *Id.* The case *sub judice* likewise involves a church clergymember and matters involving church hierarchy and, for that reason, is in line with the *Kaufmann* holding. Additionally, Young's Title VII claims cannot be construed to contain allegations of combination, conspiracy, or concerted action, as in *Kaufmann,* which could form a colorable basis for asserting the fraud or collusion exception.

The real focus is whether to afford the defendants autonomy in decisionmaking in areas involving church hierarchy or governance. Churches possess ultimate power to decide matters of governance, faith, and doctrine without governmental interference. *Kedroff,* 344 U.S. at 119, 73 S.Ct. at 156. The composition of a church's hierarchy is also primarily an ecclesiastical matter left for the church's sole resolution. *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 717, 96 S.Ct. 2372, 2384, 49 L.Ed.2d 151 (1976). The concern is, if this case proceeds, the court must face intent and pretext defenses which may cause it to pass judgment on religious beliefs. Young asks the court to intervene in a dispute decided by the United Methodist Church's clergy evaluation process, to review work product, and to review the reasoning of the Board of Ordained Ministry. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), the court would, by necessity, determine whether the defendants' reasons for the decision, as Young states in the complaint as being that she gave "bad sermons," are merely a sham. *See Sarsha v. Sears, Roebuck and Co.,* 796 F.Supp. 1132, 1135 (N.D.Ill.1992). The court is not competent to make that determination. Resolving the sex and race claims necessarily involves inquiry into the good faith of the defendants; therefore, the "very process of inquiry" may infringe first amendment rights. *Scharon v. St. Lukes Episcopal Presbyterian Hosp.,* 929 F.2d 360, 363 (8th Cir.1991). Furthermore, reinstatement into the ministry itself involves court intrusion, surveillance, and supervision of the church's operation.

These same concerns were articulated in *Hutchison v. Thomas,* 789 F.2d 392 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986), as a basis for dismissing a claim by a Methodist minister who challenged his forced retirement. The minister maintained that the United Methodist Church expelled him through fraudulent, collusive, or arbitrary application of the

church's rules, laws, and doctrinal statements. The claims included defamation, intentional infliction of emotional distress, breach of contract, and loss of consortium. *Id.* at 393. The Sixth Circuit determined that inquiring into the employment relationship between the minister and church impermissibly immerses the court in a review of religious tenets, rules, and regulations, and would involve a review of internal discipline and government. Because these matters involve who will preach from the pulpit and who will occupy church parsonage, courts must allow churches to decide these questions without court interference. *Id.* at 394; *see also Lewis v. Lake Region Conference of Seventh Day Adventists,* 779 F.Supp. 72, 77 (E.D.Mich.1991) (claims by a minister and spouse alleging breach of contract, promissory estoppel, intentional infliction of emotional distress, and derivative spousal claim dismissed), *aff'd,* 978 F.2d 940 (6th Cir.1992).

In *McClure,* the Fifth Circuit held that Title VII could not constitutionally reach a decision affecting the church-minister relationship of the Salvation Army. The court stated:

> The Salvation Army is a church and Mrs. Billie B. McClure is one of its ordained ministers.... Restricting our decision to the church-minister relationship and expressly refraining from any decision as to other church employees of a type not involved in this controversy, we affirm the judgment rendered below.

*McClure,* 460 F.2d at 554–55. The court reasoned that "[m]atters touching [the relationship between an organized church and its ministers] must necessarily be recognized as of prime ecclesiastical concern." *Id.* at 558–59. Other cases include *Minker v. Baltimore Annual Conference of United Methodist Church,* 894 F.2d 1354, 1358 (D.C.Cir.1990) (minister barred from bringing discrimination suit against church under Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*); *Rayburn,* 772 F.2d at 1172 (female church pastor barred from bringing Title VII claim of sexual and racial discrimination).

Accordingly, cases "exempting" religious institutions from Title VII rest on the observation that the employee is engaged in activities traditionally considered ecclesiastical or religious. *Southwestern Baptist,* 651 F.2d at 287. Imposing court scrutiny on every decision of a church which touches on its ministers places an excessive burden on the autonomy of religious institutions to chose its leaders and preachers. "[I]ntroduction of government standards to the selection of spiritual leaders would significantly, and perniciously, rearrange the relationship between church and state." *Rayburn,* 772 F.2d at 1169. As one commentator noted, the "[b]urden on [a church's] right to autonomy [in religious matters] is measured by the proximity of the employment relationship to the central mission and purpose of the religious organization." Mark F. Kohler, Comment, *Equal Employment or Excessive Entanglement? The Application of Employment Discrimination Statutes to Religiously Affiliated Organizations,* 18 Conn.L.Rev. 581, 611 (1987). The cases recognize this relationship. As a result, "[w]hen churches expand their operations beyond the traditional functions essential to the propagation of their doctrine," *Southwestern Baptist,* 651 F.2d at 285, and employ individuals to perform primarily non-pastoral or secular functions, the burden of a court's intrusion on a church's autonomy is minimal and the employers are subject to Title VII. But when religious entities decide to employ persons to perform tasks traditionally ecclesiastical or that advance the institution's religious mission, courts must refrain from interfering in these matters. The cases make clear that not every employment relationship between a church or other religious entity and its employees is a matter exclusively quartered in the ecclesiastical. *See id.* at 287. Courts must inevitably inquire into or determine whether one is working in an ecclesiastic capacity. Thus, whether an employee is hired for and is involved in primarily—if not exclusively—religious rather than secular functions becomes the defining principle for application of Title VII to religious institutions. That inquiry, however, is not as burdensome an entanglement as forcing a church to accept an individual into its ranks, or to proceed with discovery into whether the plaintiff was a good parishioner. Thus the formulation is not a formidable one. *See, e.g., id.* at 283.

In the present case, there is a close proximity between the mission of the Methodist

Church and Young's position. The complaint acknowledges the preaching function even of Young's position as a probationary minister. When it comes to establishing the criteria for determining and then making the determination regarding who should preach from the pulpit, comfort the dying, visit the imprisoned, discuss morality, set an example for all to see, explain church dogma, expound on the meaning of faith, hope and charity, and carry on the mission of the church, such decisions are wisely and constitutionally left to the wearers of the religious rather than the judicial robe. It therefore becomes prudent to avoid the temptation to get involved in the religious affairs of the defendants; courts should avoid questions pertaining to a church's governance or hierarchy. Whether this conclusion is jurisdictional, or is merely a court-crafted exception to Title VII, claims against religious entities under Title VII involving employees engaged in the religious mission of the church and the propagation of its ecclesiastical pursuits must be dismissed.

### CONCLUSION

For reasons stated above plaintiff's claim for compensatory and punitive damages, for reinstatement as a probationary minister, and for a court-ordered new review of her application for the Elder position is dismissed. The defendants' motion to dismiss is granted.

IT IS SO ORDERED.