James GRAMMATICO, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 95–4034.

United States District Court,
C.D. Illinois,
Rock Island Division.

July 25, 1996.

Michael J. Warner, Rock Island, IL, for plaintiff.

Gerard A. Brost, Assistant U.S. Attorney, Peoria, IL, for defendant.

## ORDER

MIHM, Chief Judge.

This matter is before the Court on the United States' Motion to Dismiss or in the Alternative For Summary Judgment [# 12] and James Grammatico's Resistance to Defendant's Motion to Dismiss/Motion for Summary Judgment [# 19]. For the reasons set forth below, the United States' Motion to Dismiss is GRANTED, and the Motion for Summary Judgment is MOOT.

### Background

For purposes of the Motion to Dismiss, the following facts will be taken as true. Sometime prior to March 26, 1992, the Milan Tool Company ("Company") purchased a used radial mill ("product"). (Complaint ("Complt.") at Count I, ¶ 2.) The Company purchased the product in Rock Island, Illinois, at an auction conducted by the Defendant, the United States of America ("Government"), through its agent, the Defense Reutilization & Marketing Services ("DRMS"). *Id.* On March 26, 1992, Plaintiff, James Grammatico ("Grammatico"), a Company employee, used the product to cut a piece of metal. *Id.* at Count I, ¶¶ 1, 4. While Grammatico was using the product, it failed to reset and stop, thereby injuring his left hand and forearm. *Id.* at Count I, ¶ 4.

Count I alleges that the Government is strictly liable because the product was not reasonably safe in that "a) [t]he product failed to provide appropriate guarding mechanisms[,] b) [t]he product had a defective hand brake[,] [and] c) [t]he product had no emergency stop mechanism." (Plaintiff's Resistance to Defendant's Motion to Dismiss/Motion for Summary Judgment ("P.Res.") at ¶ 1; Complt. at Count I, ¶ 5.) As a proximate cause of one or more of these conditions, Grammatico claims that he sustained his injury. *Id.* at Count I, ¶ 8.

Count II alleges that the Government was negligent in its sale of the product for the following reasons: (1) It "[s]old a product which failed to provide appropriate guarding mechanisms," (2) it "[s]old a product which had a defective hand brake," (3) it "[s]old a product that had no emergency stop mechanism," and (4) it "[f]ailed to take reasonable steps to ascertain whether the product was reasonably safe when operated in the manner intended for its use." *Id.* at Count II, ¶ 5. Grammatico claims that the Government's negligence was the proximate cause of his injury, and he prays for judgment against the Government in the amount of $1 million pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671. *Id.* at Jurisdictional Allegations, ¶ 1 and Count II, ¶ 8.

On March 29, 1996, the Government filed a Motion to Dismiss or in the Alternative for Summary Judgment, arguing that this Court lacks subject matter jurisdiction because Grammatico's claim falls within the discretionary function exception of the FTCA. (Memorandum in Support of Defendant's Motion to Dismiss ("MTD") at 11.) On May 31, 1996, Grammatico filed a response resisting the Government's discretionary function argument and a supporting memorandum. (P.Res. at 1; Memorandum in Support of Plaintiff's Resistance to Defendant's Motion to Dismiss ("RMTD") at 1.) A Reply was filed by the Government on June 19, 1996,

and Grammatico filed a Response to the Government's Reply on July 12, 1996.

## I. 12(b)(1) Motion to Dismiss

 "[N]o case can properly go to trial if [a] court is not satisfied that it has jurisdiction." *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986). On a 12(b)(1) motion to dismiss, a defendant may support the motion with "whatever documents [that] might be necessary to resolve the jurisdictional problem; an evidentiary hearing may be held if necessary." *Barnhart v. United States,* 884 F.2d 295, 296 (7th Cir.1989), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990). These evidentiary submissions do not convert a 12(b)(1) motion into a motion for summary judgment. *Crawford,* 796 F.2d at 927. A court may, however, look to the summary judgment procedures "for guidance in organizing a documentary inquiry into jurisdiction." *Id.* at 928.

## II. Count I: Strict Liability

The Government argues that the FTCA allows governmental liability only for negligent acts, thus precluding any strict liability claims as set forth in Count I. (MTD at 4–6.) Grammatico "has no resistance" to the Government's Motion to Dismiss Count I. (P.Res. at ¶ 1.) Count I is therefore dismissed.

## III. Count II: Negligence

*The Discretionary Function Exception to the FTCA*

 "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued.' " (Internal quotation marks omitted.) *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981), *superseded on other grounds as stated in Elbaz v. Congregation Beth Judea,* 812 F.Supp. 802 (N.D.Ill.1992). The terms of such a consent "define [a] court's jurisdiction to entertain the suit." (Internal quotation marks omitted.) *Id.* The FTCA is a consent by the Government to be sued and states that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same

extent as a private individual under like circumstances. . . . " 28 U.S.C. § 2674. This liability, however, "is subject to the various exceptions contained in § 2680, including the 'discretionary function' exception." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991).

 The discretionary function exception provides that the Government is not liable for:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The Supreme Court has articulated a two-part test for determining whether the exception applies. *See Gaubert,* 499 U.S. at 322–23, 111 S.Ct. at 1273–74. First, the complained-of acts must be discretionary in that they "involve an element of judgment or choice." (Internal quotation marks omitted.) *Id.* at 322, 111 S.Ct. at 1273. Thus, if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then the requisite element of choice is not present, and the exception does not apply. (Internal quotation marks omitted.) *Id.* Second, the alleged acts must be "based on considerations of public policy." (Internal quotation marks omitted.) *Id.* at 323, 111 S.Ct. at 1273. The second part of the *Gaubert* test is intended to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." (Internal quotation marks omitted.) *Id.*

The Government argues that this Court lacks subject matter jurisdiction over the negligence claim because the Government's sale of the product constitutes a discretionary function exception to the FTCA. (MTD at 7.) The Government argues that the exception applies because it exercised its discretion when selling the product "as is/where

is" and it grounded this decision on considerations of economic policy. *Id.* at 11.

Grammatico argues that the Government's sale of the product does not fall within the discretionary function exception. (RMTD at 2.) He posits that "the government confuses a disclaimer of warranty with the exercise with a discretionary function." *Id.* at 3. He argues that a disclaimer of warranty "has nothing to do with the negligence of the government." *Id.* at 5. Grammatico also posits that the discretionary function exception does not apply because federal statutes, regulations, and policies prescribed the course of action government employees should have taken. *Id.* at 14.

### 1. "As is/where is"

■ Neither the Supreme Court nor the Seventh Circuit has ruled whether an "as is" sale of property by a governmental agency shields the Government from liability under the discretionary function exception to the FTCA when that property causes a plaintiff's injury. However, this district has held that an "as is" sale of asbestos without any warnings fell within the discretionary function exception of the FTCA because the decision to sell the asbestos according to those terms involved the "weighing of economic and other policy factors." *Stewart v. United States,* 486 F.Supp. 178, 184 (C.D.Ill.1980).

Likewise, the Sixth Circuit has held that an "as is/where is" sale of a jeep by the Post Office Department fell within the discretionary function exception of the FTCA because the decision to sell the vehicle in a way to maximize return on the investment involved policy considerations. *Myslakowski v. United States,* 806 F.2d 94, 96–98 (6th Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987). The Fourth Circuit similarly has held that a sale of a home containing asbestos by the Veteran's Administration on an "as is" basis fell within the discretionary function exception of the FTCA because the manner of sale was in furtherance of a policy "to sell acquired property quickly and at the best attainable price." *Kane v. United States,* 15 F.3d 87, 88–89 (8th Cir.1994).

In the present case, the radial mill was sold pursuant to the Federal Property and Administrative Services Act of 1949 ("FPASA"), 40 U.S.C. § 471, *et seq.* (Defendant's Statement of Undisputed Facts at ¶¶ 12–13.) The FPASA provides in its declaration of policy that "[i]t is the intent of Congress in enacting this legislation to provide for the Government an economical and efficient system for ... the disposal of surplus property." 40 U.S.C. § 471(c). The "Method of disposition" section of this Act provides:

> Any executive agency designated or authorized by the Administrator to dispose of surplus property may do so by sale, exchange, lease, permit, or transfer, for cash, credit, or other property, **with or without warranty,** and upon such other terms and conditions **as the Administrator deems proper,** and it may execute such documents for the transfer of title or other interest in property and take such other action as it deems necessary or proper to dispose of such property under the provisions of this subchapter.

(Emphasis added.) 40 U.S.C. § 484(c).

The DRMS sold the radial mill subject to the terms of its Standard Form 114C:

> Unless otherwise specifically provided in the Invitation, all property listed therein is offered for sale **"as is" and "where is."** The description of the property is based on the best information available to the sales office. However, unless specifically provided in the Invitation, the Government makes no warranty, express or implied, as to quantity, kind, character, quality, weight, size, or description of any of the property, or its fitness for any use or purpose. . . .

(Emphasis added.) (MTD at 10.)

Congress gave the DRMS wide latitude in defining the terms of its sale of surplus property. *See* 40 U.S.C. § 484(c). The DRMS exercised its discretion when choosing to sell the product according to the terms of Standard Form 114C—without warranty or inspection. As this decision involved judgment, it satisfies prong one of the *Gaubert* test. *See Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. Furthermore, the DRMS's decision to sell the radial mill according to the terms of Standard Form 114C was made pursuant

to a policy of "economical and efficient" disposal of surplus property as set forth in the policy statement of the FPASA. 40 U.S.C. § 471. Acting according to this policy satisfies the second prong of the *Gaubert* test. *See Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274. Thus, the sale is within the discretionary function exception.

Grammatico, however, cites to a number of Uniform Commercial Code provisions for the proposition that a disclaimer of warranty does not negate liability for negligence. (RMTD at 3–5.) This argument misapprehends the significance of the disclaimer of warranty in the present case. The disclaimer of warranty itself does not shield the Government from liability as a disclaimer of liability for negligence. Rather, the DRMS's decision to sell the product without warranty or inspection evidences that the sale was made pursuant to the discretion given to it by Congress in furtherance of an economic policy. Thus, the *decision* to sell the product without warranty or inspection—not the disclaimer of warranty itself—places the sale within the discretionary function exception. Because the sale of the product falls within this exception to the FTCA, the Government is immune from suit with respect to the sale.

Although Grammatico argues that "[t]he government has simply submitted no evidence that the contract provision in question was intended to be an exercise of discretionary authority," (Plaintiff's Response to the Government's Reply at 2), the Supreme Court has held that:

> The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275; *Kane*, 15 F.3d at 89. Thus, the issue is not whether the DRMS intended to disclaim liability with its disclaimer of warranty but, rather, whether the decision to disclaim the warranty meets the objective *Gaubert* criteria. The Government therefore need not have submitted any evidence that the DRMS intended to exercise the discretionary function exception when selling the product.

## 2. *Prescribed Procedures*

■ Grammatico also contends that the sale of the product does not fall within the discretionary function exception because "[t]here are federal statutes, regulations and guidelines which impose a duty upon the defendant to sell property that is reasonably safe at auctions." (RMTD at 8.) He argues that the product is a "hazardous material" or "dangerous property." (RMTD at 11; 41 C.F.R. § 101–42, *et seq.* (1995)). Because the Code of Federal Regulations ("CFR") provides that the agency in possession of the property must "provide all necessary information to insure that prospective bidders are informed of hazards" when selling hazardous materials, Grammatico posits that this prescription mandated that the Government should have inspected the mill and should have warned prospective buyers of any hazards. (RMTD at 11, 14; *see* 41 C.F.R. § 101–42.403.) The CFR provisions, he contends, take the Government's actions out of the discretionary function exception, and it is therefore liable for its alleged negligence. *Id.* at 14.

The Government counters that the term:

> "[H]azardous material" is a term of art under the regulations governing sales of surplus property and is clearly intended to require special procedures in the sales of items having some chemical or environmental risk.

(Defendant's Reply at 6.) It argues that Grammatico's interpretation of "hazardous material" is "too broad and clearly contrasts with the obvious purpose of the regulations." *Id.* at 7. Furthermore, the Government contends that while it is true that foundry machinery (*e.g.*, the radial mill) may contain hazardous materials, nothing suggests that the product in question contained such materials or that any hazardous material was involved in Grammatico's injury. *Id.* at 6 n. 1.

If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then the first prong of the *Gaubert* test requiring an element of choice is not present, and the discretionary function exception does not preclude govern-

mental liability. *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273. The CFR contains prescriptions for the sale of "hazardous material and certain categories of property" which Grammatico argues apply to the sale of the radial mill. 41 C.F.R. § 101–42, *et seq.* (RMTD at 8–10.) Special procedures are required when selling hazardous material. 41 C.F.R. § 101–42.4, *et seq.* For example, the holding agency must "provide all necessary information to ensure that prospective bidders are informed of hazards, and to list the precautions bidders should take to protect themselves" and must identify such materials as hazardous. *Id.* at § 101–42.404.

The relevant CFR provision provides the following definition of "hazardous material":

> [P]roperty that is deemed a hazardous material, chemical substance or mixture, or hazardous waste under the Hazardous Materials Transportation Act (HMTA), the Resource Conservation and Recovery Act (RCRA), or the Toxic Substances Control Act (TSCA).

*Id.* at § 101–42.001(c). The CFR provision then lists characteristics which hazardous materials generally possess. *Id.* Those characteristics refer to the dangerous chemical nature of a hazardous material. *See Id.* (listing characteristics such as flash point, radioactivity, and flammability).

In the present case, the product in question does not fall within the definition of a hazardous material as set forth in the CFR. The characteristics of hazardous materials envision materials which pose a chemical hazard to the public. Grammatico has not alleged that the radial mill posed any chemical threat to the public; rather, he has alleged that the radial mill posed a mechanical danger to an individual using the product. Such danger does not bring the product within the definition of a hazardous material.

The product also does not fall within the category of "dangerous property" as defined in the relevant CFR sections. *See Id.* at § 101–42.1101(b). The CFR contains a table which lists Federal Supply Classes of property which "by virtue of [their] potentially dangerous nature, require[ ] controls to assure adequate safety to life, property, and the environment, and which [are] therefore defined as ... hazardous materials." *Id.* at § 101–42.1101(a). When a Federal Supply Class contains "a significant number of hazardous items" according to the definition of hazardous material as set forth in § 101–42.001, "a material safety data sheet should accompany the item...." *Id.* at § 101–42.1101(c).

The table listing Federal Supply Classes of potentially dangerous property in § 101–42.1101(c) lists metalworking machinery as a Federal Supply Class possibly containing "hazardous hydraulic fluids including PCBs" requiring identification. *Id.* The radial mill in the present case, however, would only require special identification if it contained a hazardous material as defined in § 101–42.001—the section listing hazardous materials of a chemical nature. Thus, metal working machinery is not *per se* dangerous property; it only becomes so if it contains hazardous chemicals as set forth in the CFR. Grammatico has presented nothing to suggest that such chemicals were present in the radial mill. Absent such chemicals, no special procedures were required for the sale of the product. Therefore, no "federal statute, regulation, or policy specifically prescribes" a course which the holding agency must follow when conducting a sale of the product, and the sale is within the discretionary function exception. *See Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273.[1] While this may appear to be a harsh result, it is the result compelled by the narrow exception to sovereign immunity carved out by the FTCA.

### Conclusion

For the reasons stated herein, the United States' Motion to Dismiss [# 12] is GRANT-

---

1. Grammatico also argues that 29 C.F.R. § 1910.212 requires "point of operation guarding" on machinery. (Plaintiff's Response to Defendant's Reply at 3.) While this OSHA regulation does require such guards, the absence of such guards in no way makes the radial mill a "hazardous material" or "dangerous property" as set forth in 41 C.F.R. § 101–42, *et seq.* This regulation therefore does not affect the propriety of the sale.

ED, and the Motion for Summary Judgment is MOOT. This case is terminated.